# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2023

Lyle W. Cayce
Clerk

No. 23-50575

———————

In re TikTok, Incorporated; TikTok Pte., Limited;
ByteDance, Limited; ByteDance, Incorporated,

*Petitioners.*

———————————————————

Petition for Writ of Mandamus to
the United States District Court
for the Western District of Texas
USDC No. 6:21-CV-504

———————————————————

Before Smith, Southwick, and Wilson, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

A writ of mandamus is reserved for extraordinary circumstances. TikTok, Incorporated, and various related entities contend that the district court's denial of their motion to transfer to the Northern District of California was so patently erroneous that this rare form of relief is warranted. After reviewing the parties' submissions, the conscientious district court's opinion, and the factual record, we agree. This case was brought by a Chinese plaintiff, challenges conduct that took place mostly in China and to a lesser extent in California and rises or falls with proof located outside the Western District of Texas. Under our precedent, denying petitioners' motion to transfer was a clear abuse of discretion, and because petitioners satisfy the other requirements for mandamus relief, their petition for writ of mandamus is granted.

No. 23-50575

## I.

TikTok is a popular application that allows users to edit and share short videos. The application depends in part on software that enables video and audio editing by its users. Beijing Meishe Network Technology Co., Ltd. ("Meishe"), is a Chinese company and the owner of several Chinese copyrights covering the source code for a specific type of video- and audio-editing software.[1]  Meishe alleges that one of its former employees disclosed that source code to petitioners, who used the code to develop a video-editing functionality that was then implemented into the current version of TikTok. The development of the video-editing functionality took place in China and was implemented into TikTok in part by a team of engineers located in California.

That team of engineers works in petitioners' Mountain View office, within the Northern District of California. One member of the engineering team works remotely from Irving, Texas, in the Northern District of Texas and 113 miles from the relevant Western District of Texas courthouse in Waco.[2]  Petitioners do have a large presence in the Western District of Texas in the form of a 300-person office in Austin. But the Austin office is a business office that does not perform engineering work, and no employee in the

---

[1] The parties do not dispute at this point in the litigation that the Chinese copyrights are enforceable in the United States. *See* 17 U.S.C. § 104(b)(2); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, L.L.C.*, 139 S. Ct. 881, 891 (2019) (recognizing that Congress removed foreign works from the Copyright Act's registration requirement).

[2] The engineer's exact address is in the record filed under seal, and we may take judicial notice of the distance between this address and the Waco federal courthouse. *Cf. United States v. Herrera-Ochoa*, 245 F.3d 495, 502 (5th Cir. 2001) (recognizing that courts may take judicial notice of a "clear adjudicative fact: geographical location."); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518–19 (5th Cir. 2015) (recognizing that judicial notice may be taken *sua sponte* on appeal). Petitioners' contentions that this engineer has since moved to California lack record support.

No. 23-50575

Austin office was involved in the development or implementation of the video-editing functionality. The only employees who can access the source code used in the video-editing functionality are the Chinese employees who developed it and the California engineering team who implemented it.

In May 2021, Meishe filed this lawsuit in the Western District of Texas, Waco Division. It alleged copyright infringement and trade-secret misappropriation, false advertising under the Lanham Act, and state law claims for unfair competition, unjust enrichment, and aiding and abetting a breach of fiduciary duty. All claims stem from petitioners' alleged use of Meishe's source code to develop and implement TikTok's current video-editing functionality. Meishe also filed lawsuits in China alleging substantially the same claims; those suits are ongoing.

Petitioners first filed a motion to dismiss Meishe's claims and a motion to stay the case pending adjudication of the Chinese lawsuits. Shortly thereafter, petitioners moved under 28 U.S.C. § 1404 to transfer the case to the Northern District of California. Almost a year later, a magistrate judge issued a recommended order denying transfer,[3] and the district court adopted that order in full.[4] While the motion to transfer was pending, the case proceeded though discovery, and a trial date was set for April 2024. Upon denial of the motion to transfer, petitioners petitioned this court timely for a writ of mandamus directing the district court to transfer this case to the Northern District of California.

---

[3] *Beijing Meishe Network Tech. Co. v. Tiktok Inc.*, No. 6:21-cv-504, 2023 U.S. Dist. LEXIS 63036 (W.D. Tex. Apr. 11, 2023).

[4] Because the district court adopted the magistrate judge's report in full, all references to the district court's analysis are synonymous with references to the magistrate judge's recommended order.

No. 23-50575

## II.

Plaintiffs are permitted to engage in a certain amount of forum-shopping. *Cf. Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 293 (5th Cir. 2016) (recognizing that Rule 41(a)(1) permits voluntary dismissal to secure a plaintiff's preferred forum). Defendants can protect themselves from the most blatant forum-shopping by invoking 28 U.S.C. § 1404(a). That statute allows a district court to transfer "any civil action to any other district or division where it might have been brought" when the "convenience of parties and witnesses" and "the interest of justice" so require. *Id.*[5] "[M]andamus is an appropriate means of testing a district court's § 1404(a) ruling." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc).

A petitioner must satisfy three requirements for a writ of mandamus. First, there must be "no other adequate means to attain the relief . . . desire[d]." *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380–81 (2004). Second, the "right to issuance of the writ" must be "clear and indisputable." *Id.* (internal quotation marks omitted). In the § 1404(a) context, "the second requirement . . . captures the essence of the disputed issue." *Volkswagen*, 545 F.3d at 311. That is because this circuit has established that the first "mandamus requirement is satisfied in the motion-to-transfer context." *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam). Third, and finally, "even if the first two prerequisites [are] met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381.

---

[5] All parties agree that this case "might have been brought" in the Northern District of California.

No. 23-50575

III.

Petitioners have a clear and indisputable right to the writ where "the district court clearly abuse[s] its discretion . . . in denying [the] transfer motion." *Volkswagen*, 545 F.3d at 311. That means the Northern District of California must be "a clearly more convenient venue than the" Western District of Texas such that "the district court's ruling to the contrary was a clear abuse of discretion" leading to a "patently erroneous result." *Radmax*, 720 F.3d at 287, 290 (cleaned up).

The district court should grant a motion to transfer venue under § 1404(a) where

> "the movant demonstrates that the transferee venue is clearly more convenient," taking into consideration (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id.* at 288 (quoting *Volkswagen*, 545 F.3d at 315). No factor is of dispositive weight, and we have cautioned against a "raw counting of the factors" that "weigh[s] each the same." *Id.* at 290 n.8. Indeed, we have found an abuse of discretion even where a majority of factors are neutral. *See id.* at 290 (granting mandamus when five factors were neutral and three weighed in favor of transfer). That is because *Volkswagen* recognized that a district court abuses its discretion by denying transfer when "not a single relevant factor favors the [plaintiff's] chosen venue." *Volkswagen*, 545 F.3d at 318.

No. 23-50575

The district court denied petitioners' motion to transfer after finding that five of the eight factors were neutral, and three weighed against transferring to California. As we explain, that well-intended conclusion "was a clear abuse of discretion" leading to a "patently erroneous result." *Id.* at 287, 290 (cleaned up). We address each factor in turn.

*The relative ease of access to sources of proof*

The first factor focuses on the location of "documents and physical evidence relating to the [case]." *Volkswagen*, 545 F.3d at 316. "The question is *relative* ease of access, not *absolute* ease of access." *Radmax*, 720 F.3d at 288. That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case. *See Volkswagen*, 545 F.3d at 316. But when "the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]" this factor bears less strongly on the transfer analysis. *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022).

The district court determined that this factor was neutral with respect to transfer because "most, if not all of the relevant documents are electronic and can be available as easily in Texas as in California." *TikTok*, 2023 U.S. Dist. LEXIS 63036, at *12. The record flatly contradicts that conclusion. As the district court recognized, the petitioners' source code is the most important evidence in this case. It is undisputed that only certain of petitioners' employees can access the source code because petitioners have placed it behind a security clearance. Therefore, the key evidence may be electronic, but unlike in *Planned Parenthood*, it is not "equally accessible in either forum." 52 F.4th at 630. Rather, the record established that there are two groups of employees with this security clearance: The Chinese employees who developed the video-editing functionality and members of the California engineering team who implemented the functionality into TikTok.

No. 23-50575

The district court concluded that the source code was accessible as easily in Texas as in California because one member of the California engineering team with the needed security clearance worked remotely in Irving, Texas. But the court erred by comparing Texas with California when it should have been comparing the Western District of Texas with the Northern District of California. *Cf. Volkswagen*, 545 F.3d at 307 (comparing the Eastern District of Texas with the Northern District of Texas). The one employee in Texas who possessed the needed security clearance lived in the Northern District of Texas.

There are no employees in the Western District of Texas who can access the source code. The only way it can be accessed there is if out-of-district individuals travel into the district, "bringing" the electronic evidence with them.[6] That, of course, is possible, but the question under the first factor is "*relative* ease of access, not *absolute* ease of access." *Radmax*, 720 F.3d at 288. It is relatively easier to access to the source code in the Northern District of California—where a majority of the engineering team is based—than it is in the Western District of Texas, where the source code can be accessed only by bringing far-flung individuals into the district. The district court abused its discretion in finding that the source code was accessible as easily in Texas as in California.

The district court also based its conclusion that this factor was neutral

_____

[6] This discussion should not be seen as unsettling the understanding that the first factor looks only at ease of access to non-witness evidence, while the second and third factors relate to the convenience of each forum for witnesses. *See In re Apple, Inc.*, 979 F.3d 1332, 1339–40 (Fed. Cir. 2020) (applying Fifth Circuit law). To the extent there is any overlap between the factors in this case, it flows from the fact that only a select few individuals have access to the key non-witness evidence in this case. The non-witness evidence "travels" with the employees who have the needed security clearance. Therefore, the location of those individuals necessarily bears on which forum has relative ease of access to sources of proof.

on a finding that petitioners' "President of Global Business Solutions . . . lives and works in [the Western District of Texas] along with over 300 other employees." *TikTok*, 2023 U.S. Dist. LEXIS 63036, at *12–13. In the district court's view, petitioners' large presence in the Western District of Texas raises an "extremely plausible and reasonable inference" that these employees possess some relevant documents. *Id.* But the district court cannot rely on the mere fact that petitioners have a general presence in the Western District of Texas because *Volkswagen* commands courts to assess its eight factors considering the circumstances of the specific case at issue.[7]

Neither the district court nor Meishe identifies any record evidence showing that any employee in the Western District of Texas possesses proof relevant to this case. The district court relied on deposition testimony and witness declarations from several of petitioners' employees. That evidence, however, only establishes that a high-ranking company executive and other employees worked in Austin as members of a "Global Business Solutions Group." It does not tie those individuals to this case, or show that they do any work related to the video-editing functionality or its implementation, or support the proposition that any of them would have physical proof relevant to the adjudication of Meishe's claims. Based on what is in the record—as distinguished from Meishe's unsupported contentions in various litigation documents—it is pure speculation whether any of petitioners' Austin-based employees possesses or has access to proof relevant to this case.

Abuse-of-discretion review is deferential; it is not a rubber stamp. We must credit a district court's reasonable inferences when they are rooted in record evidence. But where, as here, there is nothing in the record support-

---

[7] *Cf. Volkswagen*, 545 F.3d at 312 (finding a clear abuse of discretion where "nothing . . . ties this case to the Marshall Division.").

ing its conclusions, we may comfortably say that the court has committed a clear abuse of discretion in surmising that petitioners' employees in the Western District of Texas possess evidence related to this case.

Therefore, this factor weighs in favor of transfer because, as in *Volkswagen*, no evidence relevant to this case is in the transferor district. The district court committed a clear abuse of discretion in concluding otherwise.

*The availability of compulsory process*

The second factor focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen*, 545 F.3d at 315. This factor favors transfer where "non-party witnesses . . . are outside the [Western] District's subpoena power" and "a proper venue that does enjoy absolute subpoena power for both depositions and trial" is available. *Id.* at 316 (cleaned up). "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (internal quotation marks omitted).

The parties dispute whether the district court determined that this factor was neutral or weighed against transferring to California. Meishe contends that the district court determined this factor was neutral with respect to transfer because petitioners had not identified any non-party witnesses who are unwilling to testify. Petitioners do not dispute that they failed to identify any non-party witnesses who are unwilling to testify. Rather, they contend that the district court erred in finding that, absent such a showing, this factor disfavored transfer. The district court's holding on this factor is admittedly subject to interpretation. The court first said that it "agreed" with Meishe's contention that this factor "weighs against transfer[,]" but then said that "this factor fails to support transfer." *TikTok*, 2023 U.S. Dist. LEXIS 63036, at *14–16.

No. 23-50575

Though the district court have been more explicit, the overall tenor of this part of its opinion shows that it determined this factor was neutral. On the very next line after expressing agreement with Meishe's contention, the court explicitly said that petitioners have "again failed to show that this factor favors transfer, and certainly doesn't show that NDCA is clearly more convenient." *Id.* at 16. Therefore, whatever the court meant by expressing agreement with Meishe's contention that this factor disfavored transfer, it actually held that this factor was neutral.

Given that *Planned Parenthood* allows district courts to afford this factor "less weight when it has not been alleged or shown that any witness would be unwilling to testify[,]" we cannot say that the district court committed a clear abuse of discretion in holding that this factor is neutral when petitioners have failed to identify any unwilling non-party witness. *Planned Parenthood*, 52 F.4th at 630–31 (internal quotation marks omitted).

*The cost of attendance for willing witnesses*

The third factor focuses on "the cost of attendance for willing witnesses." *Volkswagen*, 545 F.3d at 315. Our circuit uses a "100-mile threshold" in assessing this factor. *Id.* at 317. "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (internal quotation marks omitted). This is an "obvious conclusion" because "it is more convenient for witnesses to testify at home[,]" and "additional distance means additional travel time . . . meal and lodging expenses" and time "witnesses must be away from their regular employment." *Id.* (cleaned up). Witnesses also suffer "personal costs associated with being away from work, family, and community" when they testify far from home. *Id.*

The district court determined that this factor was neutral primarily

because "the key witnesses and the employee at the heart of the misappropriation claim are in China." *TikTok*, 2023 U.S. Dist. LEXIS 63036, at *20. That conclusion ignores our 100-mile test. Indeed, the district court failed to discuss that part of *Volkswagen*. Accepting the court's finding that the "bulk of relevant witnesses [are] in China[,]" it is indisputable that the Northern District of California is clearly more convenient for these witnesses than the Western District of Texas.[8]

It is true that one of the engineers who implemented the video-editing functionality lives in Irving, Texas—only 113 miles from the Waco federal courthouse. But most relevant witnesses are in China or California. The presence of one Texas witness cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas.[9] These witnesses would have to travel thousands of extra miles,

---

[8] *Cf. In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (applying Fifth Circuit law to hold that this factor clearly favored transfer when some key witnesses were from Japan and "would each have to travel an additional 1,756 miles or 7 hours by plane to Texas as compared with Washington State.").

[9] The district court found that there were witnesses in the Western District of Texas relevant to determining Meishe's damages. That finding was a clear abuse of discretion because—as with the findings under factor one—the record is devoid of any evidence supporting an inference that petitioner's Austin employees have any knowledge of or connection to this specific dispute. In concluding otherwise, the district court relied on the same depositions and witness declarations as it did in factor one. But as we have already explained, that evidence only establishes that a high-ranking company executive and other employees worked in Austin as members of a "Global Business Solutions Group." The evidence amounts to an acknowledgement of these employees' existence and a recognition that they work in petitioners' business department. It is rank speculation whether these employees have any knowledge that would make them relevant witnesses.

Therefore, as in factor one, the district court committed a clear abuse of discretion by including petitioners' Austin employees in its analysis. And even if there were relevant witnesses in the Western District of Texas, that does not change the fact that the vast majority of witnesses, including the individual who supposedly misappropriated the source code, are located thousands of miles from Waco.

incurring substantial "additional travel time . . . meal and lodging expenses[,]" time "away from their regular employment[,]" and "personal costs associated with being away from work, family, and community." *Volkswagen*, 545 F.3d at 317 (cleaned up).

In sum, the district court's analysis of this factor should have ended with its recognition that "the bulk of relevant witnesses [are] in China." *TikTok*, 2023 U.S. Dist. LEXIS 63036, at *20. Under *Volkswagen*'s 100-mile threshold, the Northern District of California is a clearly more convenient venue for most relevant witnesses in this case. The district court committed a clear abuse of discretion in concluding otherwise.

*All other practical problems*

The fourth factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315. This factor weighs against transfer when petitioners "inexcusably delayed" bringing their motion until "late in the litigation." *Planned Parenthood*, 52 F.4th at 631. But "garden-variety delay associated with transfer is not to be taken into consideration when" weighing this factor. *Radmax*, 720 F.3d at 289. Additionally, a hypothetical question about whether the transferee forum would have personal jurisdiction over a party cannot, by itself, justify a conclusion that this factor weighs against transfer. *See Def. Distrib. v. Bruck*, 30 F.4th 414, 435–36 (2022).

The district court determined that this factor weighed against transfer because it had already committed significant judicial resources to the matter and developed a "body of knowledge" relating to the case. Petitioners contend that the court abused its discretion in considering knowledge acquired and resources expended after the filing of their § 1404(a) motion. We agree; under the specific facts of this case, the court abused its discretion in consid-

ering post-motion events under this factor.[10]  "[D]isposition of a [§ 1404(a)] motion should [take] a top priority in the handling of a case." *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003).  A district court that disregards this command without reason by taking an excessively long time to rule cannot then turn around and use the progress the case has made while the § 1404(a) motion was pending as a reason to deny transfer.

The magistrate judge did not issue the recommended order until approximately 11 months after petitioners had originally filed their motion to transfer.  The district court did not adopt that recommendation and enter the official order denying transfer until approximately 14 months after petitioners had originally filed their motion.  A delay of this length is a plain violation of our instruction to give § 1404(a) motions "a top priority in the handling of a case." *Id.*  Neither the district court nor the magistrate judge has offered any adequate explanation for why this motion lingered on the docket for such a long period of time in contravention of *Horseshoe*'s command.[11]  We cannot accept Meishe's view that this factor permits a district

---

[10] Petitioners cite *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960), and *Nintendo* to contend that district courts are *per se* forbidden from considering post-motion events under this factor.  *Blaski* is inapposite because the relevant part of the opinion was interpreting a different part of § 1404(a).  *See Blaski*, 363 U.S. at 343 (interpreting the phrase "where it might have been brought.").

*Nintendo* does analyze the second and third factors "[a]t the time Nintendo requested transfer." 589 F.3d at 1197.  But the Federal Circuit never held that this temporal frame applied throughout the § 1404(a) analysis; the case never even discussed this factor.  *See id.* at 1198–1200.  Petitioners have cited no binding case that supports a *per se* limitation on a district court's ability to consider post-motion events when assessing this factor.  We decline to draw that bright line here.  Rather, under the specific circumstances of this case, the court abused its discretion in considering post-motion events.

[11] The magistrate judge did note that petitioners had filed a reply to Meishe's opposition to the § 1404(a) motion that contained several voluminous exhibits.  But that cannot explain the extended delay because the magistrate judge explicitly said "[t]he Court will also not undertake a detailed analysis of voluminous exhibits for which a pinpoint citation

No. 23-50575

court to ponder a § 1404(a) motion for over a year and then, when it finally rules on the motion, punish the moving party's diligent litigation efforts undertaken in the interim by relying on post-motion progress to hold that this factor weighs against transfer. This is especially so where, as here, it appears petitioners would have been subject to sanction for non-compliance with the discovery process.

In sum, the district court committed a clear abuse of discretion by delaying the resolution of petitioners' § 1404(a) motion for nearly a year without adequate explanation and then holding that the post-motion knowledge acquired, and the judicial resources expended after the motion was filed, weighed against transfer. The court also committed a clear abuse of discretion in considering potential personal jurisdiction problems under this factor because *Defense Distributed* held that hypothetical questions of jurisdiction cannot tip this factor against transfer. *See* 30 F.4th at 435–36. Therefore, this factor is—at most—neutral.

*The administrative difficulties flowing from court congestion*

The fifth factor considers "the administrative difficulties flowing from court congestion." *Volkswagen*, 545 F.3d at 315. The focus is on "docket efficiency[,]" an issue we have recognized "the district court is better placed" to evaluate. *Planned Parenthood*, 52 F.4th at 631. This factor normally weighs against transfer when the "case appears to be timely proceeding to trial before the" transferee district. *Id.*

The district court determined that this factor weighed against transfer because the case was moving though discovery and proceeding quickly to

───────────────

was provided." *TikTok*, 2023 U.S. Dist. LEXIS 63036, at *7. In any event, the exhibits were less than 2,000 pages, which—while lengthy—is not so extensive as to justify many months of delay in ruling.

trial, which the district court had set for April 2024.  Petitioners contend that the court abused its discretion by considering progress made after they filed their § 1404(a) motion.  Petitioners also contend that the time to trial is comparable in both districts.[12]  Meishe responds that *Planned Parenthood* allows for consideration of post-motion case progress by recognizing that factor five normally weighs against transfer when the "case appears to be timely proceeding to trial before the" transferee district.  *Id.*  But Meishe fails to note that the petitioner in *Planned Parenthood* "inexcusably delayed" in filing the § 1404(a) motion until "months into the discovery period." *Id.* (internal quotation marks omitted).  Because the petitioner there had "inexcusably delayed[,]" the district court was within its discretion to consider the progress the case had made as that motion was pending.  *See id.*

But we have the exact opposite situation here:  It was the district court—not petitioners—that was responsible for the delay.  If a court can consider post-motion case progress when a party "inexcusably delay[s]" in *bringing* its § 1404(a) motion, it follows that when a court "inexcusably delay[s]" in *ruling* on a § 1404(a) motion, it cannot misuse this factor by pointing to how close the case is to trial when the court finally rules.  *See id.* As we have explained in factor four, we can find no good reason why the district court disregarded *Horseshoe* and took over a year to issue a final ruling on petitioners' motion.

---

[12] That contention is foreclosed by *Planned Parenthood's* recognition that, as a general matter, "the district court is better placed" to evaluate its "docket efficiency." 52 F.4th at 631.  The district court believes it can try the case faster than can the Northern District of California, given the extensive progress the case has made over the last year.  Petitioners have not shown that that determination was such an abuse of discretion as to justify second-guessing a court's view of its own docket.  Therefore, this factor hinges on whether the court abused its discretion by considering post-motion case progress in its analysis.

No. 23-50575

Therefore, the district court committed a clear abuse of discretion by determining that this factor weighed against transfer based on case progress made after petitioners filed their § 1404(a) motion. This factor was—at most—neutral.[13]

*The local interest in having localized interests decided at home*

The sixth factor considers "the local interest in having localized interests decided at home." *Volkswagen*, 545 F.3d at 315. We look not to "the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distrib.*, 30 F.4th at 435 (internal quotation marks omitted). "Indeed, the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (cleaned up). Accordingly, "this factor weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *Volkswagen*, 545 F.3d at 317–18. Also, this factor can weigh against transfer when the "citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district]." *Planned Parenthood*, 52 F.4th at 632.

The district court determined that this factor was neutral because the critical conduct occurred in China, and the case primarily concerns the infringement of Chinese copyrights and the misappropriation of Chinese trade

---

[13] A quick note is in order to emphasize the narrowness of our holding with respect to factors four and five. We are presented with unusual circumstances. Petitioners filed their § 1404(a) motion timely, yet the district court took no action on the motion for months, with the record showing no adequate reason for the delay. Moreover, the court failed to grant a stay, so the case proceeded through discovery for almost a year. When the court finally ruled, it used the case progress its delay engendered as a reason for denying transfer. If we were to hold that this is a proper exercise of discretion, a district court would have absolute control over whether these two factors weighed in favor of transfer. Such a result is inconsistent with the principles underlying § 1404(a) and not mandated by any of our cases.

secrets. Therefore, the district court could not say that the Northern District of California had a greater local interest in this case than did the Western District of Texas. Petitioners attack this holding by contending that the Northern District of California has a local interest in the dispute because many of the engineers who implemented the video-editing functionality are based in that district.

It is true that, as in *Volkswagen*, the transferor district has "no relevant factual connection to the" dispute. *Id.* at 318.[14] Therefore, it would have been error to hold that this factor weighed against transfer. But unlike in *Volkswagen*, the potential transferee district has little local interest in this dispute. *Contra id.* at 317–18 (noting that the entire event took place in the transferee district). Meishe's source code was allegedly misappropriated in China by Chinese engineers. The implementation of that misappropriated code into TikTok was the only relevant event that occurred in the Northern District of California. The "event[] that gave rise to [the] suit" took place in China. *See Def. Distrib.*, 30 F.4th at 435.

Therefore, neither the citizens of the Northern District of California nor the citizens of the Western District of Texas can fairly be said to have a strong interest in this dispute. *See Planned Parenthood*, 52 F.4th at 632. Thus, we cannot say that the district court committed a clear abuse of discretion in concluding that this factor was neutral with respect to transfer.

*The familiarity of the forum with the law that will govern the case*

The seventh factor considers the current district's "familiarity with the law that will govern the case." *Volkswagen*, 545 F.3d at 315. This factor

---

[14] As discussed above, the district court abused its discretion by finding that petitioners' Austin employees have relevance to this dispute. The record is devoid of evidence supporting that conclusion, and therefore the existence of the Austin employees cannot bolster the holding on this factor.

most "commonly applies where the destination venue is in a different State—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis." *Planned Parenthood*, 52 F.4th at 632 n.5. This means that we must look to the law the district court will be called on to apply, including whether the current district court "would be bound to [the transferee court's] law concerning such claims." *Def. Distrib.*, 30 F.4th at 436.

This factor does not weigh in favor of transfer when both districts are "equally capable of applying the relevant law." *Radmax*, 720 F.3d at 289. We recognize that "[f]ederal judges routinely apply the law of a State" other than the one in which they sit" and have hesitated to find that this factor weighs in favor of transfer when there are no "exceptionally arcane features of Texas . . . law that are likely to defy comprehension by a federal judge sitting in [California]." *Def. Distrib.*, 30 F.4th at 436 (cleaned up).

The district court held that this factor weighed against transfer because some of Meishe's claims were based on Texas law, and it "is better equipped to handle [these claims]." *TikTok,* 2023 U.S. Dist. LEXIS 63036, at *28. It also dismissed petitioners' contention that California law would govern Meishe's state law claims under Texas choice-of-law rules as "irrelevant" and "pure speculation." *Id.* Those conclusions were error for two reasons.

First, *Defense Distributed* does not allow the district court to dismiss petitioners' choice-of-law contention blithely. 30 F.4th at 436. Because this factor focuses on the governing law, courts must make a good-faith attempt to ascertain which jurisdiction's law will apply, even when the outcome of that choice-of-law analysis is not entirely clear.

Second, even if Texas law unequivocally governed petitioners' state-law claims, that alone is not enough to hold that a Texas federal judge is better

equipped to handle these claims. *Defense Distributed* requires something more: There must be some "exceptionally arcane features of Texas . . . law that are likely to defy comprehension by a federal judge sitting in [California]." *Id.* (cleaned up). Neither the district court nor Meishe has offered any explanation for why the Texas law governing Meishe's state-law claims is so "exceptionally arcane" that the judges of the Northern District of California would be less equipped to handle these claims.

In short, the district court committed a clear abuse of discretion by holding that this factor weighed against transfer without first attempting to determine the governing law. Even accepting its conclusion that Texas law applies, the court erred by assuming that it was more capable at applying Texas law than are the judges of the Northern District of California when the court identified no exceptionally arcane aspects of Texas law governing Meishe's state-law claims. This factor was, at most, neutral.

*The avoidance of unnecessary problems of conflict of laws*

The eighth factor focuses on "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen*, 545 F.3d at 315. Petitioners do not contest the district court's determination that this factor is neutral.

## IV.

In summary, factors one and three weigh in favor of transfer. All other factors are neutral with respect to transfer. A district court abuses its discretion by denying a motion to transfer when "virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *Radmax*, 720 F.3d at 290; *see also Volkswagen*, 545 F.3d at 318 ("The only connection between this case and the [transferor forum] is plaintiffs' choice to file there."). Here, as in *Volkswagen*, not a single factor weighs in favor of refusing transfer. The Western District of Texas contains no relevant evi-

dence, is thousands of miles away from the vast majority of relevant witnesses, and is wholly unconnected to the underlying dispute. This case concerns Chinese intellectual property that was allegedly infringed and misappropriated by employees located in China. The only individuals in the United States who have any documented connection to this dispute are located outside the district. The Northern District of California is a clearly more convenient venue to adjudicate this case.

The only thing connecting this case to the Western District of Texas is Meishe's decision to file suit there. The district court's decision to retain this case and deny petitioners' motion to transfer was a "clear abuse of discretion" leading to a "patently erroneous result." *Radmax*, 720 F.3d at 287, 290 (cleaned up). Therefore, petitioners' "right to issuance of the writ" is "clear and indisputable." *Cheney*, 542 U.S. at 380–81.

## V.

The reader will recall that petitioners must establish three requirements to justify the issuance of the writ of mandamus. The entirety of the opinion thus far has focused on the second requirement: Whether petitioners' right to the writ is clear and indisputable. We determined that it is. The first "mandamus requirement [the lack of an appellate remedy] is satisfied in the motion-to-transfer context." *Radmax*, 720 F.3d at 287 n.2. Therefore, all that remains to decide is whether, "in the exercise of [our] discretion[,]" we are "satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380–81.

"[W]rits of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen*, 545 F.3d at 319. We have recognized that § 1404(a) decisions often have "importance beyond the immediate case . . . [b]ecause venue transfer decisions are rarely reviewed," and "district courts have . . .

applied [our] tests with too little regard for consistency of outcomes." *Id.* In the fifteen years since *Volkswagen*, we have issued fewer than ten precedential opinions applying its test. This is despite the fact that district courts within our circuit have been called on to apply *Volkswagen* in over 2,000 cases, and the Federal Circuit—which is bound by our law when certain procedural matters arise in patent cases—must review many of these decisions with little guidance from our court. Indeed, in the last few months the Federal Circuit has reached conflicting outcomes in reviewing mandamus petitions from the Western District of Texas.[15] Therefore, granting mandamus in this case will improve "consistency of outcomes" by further instructing when transfer is—or, for that matter, is not—warranted in response to a § 1404(a) motion. Therefore, the writ is appropriate under these circumstances, meaning petitioners have satisfied all three requirements needed for the issuance of the writ.

\* \* \* \* \*

The petition for writ of mandamus, requiring transfer to the Northern District of California, is GRANTED.

---

[15] *Compare In re Microsoft Corp.*, No. 2023-128, 2023 U.S. App. LEXIS 14095, at \*6 (Fed. Cir. June 7, 2023) (per curiam) (granting mandamus) *with In re Apple, Inc.*, No. 2023-135, 2023 U.S. App. LEXIS 21364, at \*5 (Fed. Cir. Aug. 16, 2023) (per curiam) (denying mandamus).